IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHERINE SEPER, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 24-cv-2516-SMY |
| vs. | )<br>) |
| NTC MARKETING INC., | )<br>) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Katherine Seper filed this putative class action against Defendant NTC Marketing, Inc. ("NTC") claiming the language "packed in 100% pineapple juice" on two NTC canned food products is false and misleading. Seper asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, for breach of express warranty, and unjust enrichment. She also seeks to certify a proposed class of Illinois and nation-wide consumers who purchased the products. Now pending before the Court is NTC's Motion to Dismiss (Doc. 10), which Seper opposes (Doc. 15). For the following reasons, the motion is **GRANTED in part** and **DENIED in part**.

## Background

Plaintiff Katherine Seper claims Defendant NTC Marketing, Inc. used "deceptive, unfair, and false merchandising practices regarding its Libby's® brand Chunk Pineapple and Sliced Pineapple "packed in 100% pineapple juice" (collectively, the "products"). Specifically, she alleges NTC prominently represents on the label the products are "packed in 100% pineapple juice", which leads Illinois citizens to believe the juice in the container is in fact 100% pineapple

juice and contains no other additive.



However, the products do not contain "100% juice" as defined by the FDA or as the phrase is understood by reasonable consumers, but also contain citric acid. Seper further alleges she was damaged because she paid a premium for the product, believing it contained only fruit and fruit juice.

Seper seeks to recover damages and injunctive relief due to NTC's false marketing and asserts claims for breach of express warranty (Count I), violations of the Illinois Uniform Deceptive Trade Practices Act ("IUDPTA") (Count II), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Counts III and IV), and unjust enrichment (Count V).

## Discussion

NTC moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing: (1) Seper's state law claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") because they would impose a "standard of identity" for canned pineapple that is not identical to the FDA's regulations; (2) Seper fails to state a valid claim under the ICFA; (3) Seper's unjust enrichment and breach of express warranty claims fail to state a claim;

and (4) Seper lacks standing for injunctive relief under the IUDTPA.

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all allegations in the Complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). This requirement is satisfied if the Complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

### Preemption

NTC asserts Seper's claims are expressly preempted because they would impose a different standard of identity for canned pineapple than that established by federal regulations. "The FDCA delegates to the FDA the power to 'promulgate regulations fixing and establishing for any food ... a reasonable definition and standard of identity.'" *Bell v. Publix Super Markets, Inc.,* 982 F.3d 468, 483 (7th Cir. 2020) quoting 21 U.S.C. § 341. These standards of identity determine what a food product must contain to be marketed under a certain name. *Id*. Express preemption bars states from directly or indirectly establishing under any authority a requirement for a food which is the subject of a standard of identity that is not identical to such standard of identity or that is not identical to the requirement of section 343(g) of the FDCA. *Id.; see also* 21 U.S.C. § 343-1(a)(1).

Preemption is an affirmative defense upon which the defendants bear the burden of proof." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Dismissals based on affirmative defenses may be appropriate when the pleadings and matters subject to judicial notice clearly prove that a plaintiff's claim is barred as a matter of law. This is not such a case.

Here, Seper is not seeking to add labeling requirements. Because the federal standard of identity does not address the "100%" language, a state law preventing such alleged deception does not establish a new requirement different from the standard of identity. *See Bell*, 982 F.3d at 484 (holding that state law claims challenging defendants' voluntary addition of "100%" to their labels was not preempted). Accordingly, NTC's motion is denied on this point.

### Injunctive Relief

NTC moves to dismiss Seper's request for injunctive relief for lack of standing. Specifically, it contends Seper is not likely to be harmed in the future by NTC's alleged misrepresentation because she is now aware Libby's canned pineapple "packed in 100% pineapple juice" has citric acid listed as an ingredient. To have standing, a plaintiff must establish: (1) injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) redressability. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights...." *Scherr*, 703 F.3d at 1074 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Seper cannot claim a likelihood that she can be harmed in the future or tricked again by the labeling language "packed in 100% pineapple juice" as she now knows the ingredient list shows

the Products' true composition. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) ("Since [plaintiff] is now aware of [defendant's] sales practices, [plaintiff] is not likely to be harmed by the practices in the future."). As such, Seper lacks standing to pursue injunctive relief, and her claim will be dismissed accordingly.

Similarly, Seper's injunctive relief claims under the Illinois Deceptive Trade Practices Act also fail to state a claim. The IDTPA is designed to enjoin trade practices that are deceptive or confusing to consumers. 815 Ill. Comp. Stat. 510/2; *see also Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1156 (Ill. App. Ct. 1992) ("The purpose of the DTPA is the enjoining of trade practices which confuse or deceive the consumer.") (internal quotation marks omitted). A claim is proper under the IDTPA when the plaintiff alleges facts showing a likelihood of future damage. *Aliano v. Louisville Distilling Co.*, 115 F. Supp. 3d 921, 928 (N.D. Ill. 2015) (citing *Robinson v. Toyota Motor Credit Corp.*, 735 N.E.2d 724, 735 (Ill. App. Ct. 2000)). Seper has not alleged facts indicating the likelihood of damage in the future. Therefore, her request for relief under the IDTPA (Count II) will be dismissed.

**Illinois Consumer Fraud and Deceptive Practices Act ("ICFA")**

The ICFA safeguards "consumers, borrowers, and businesspersons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (internal citation and quotation marks omitted). "In order to state a claim under the ICFA, a plaintiff must show: (1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *Camasta*, 761 F.3d at 739. "Although ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged

statement was not misleading as a matter of law." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001).

Seper alleges the Product's labeling "packed in 100% pineapple juice" suggests to a reasonable consumer that there are no additives in the juice, but NTC adds synthetic citric acid to its packing media. To state a viable claim for deceptive practices, a plaintiff must plausibly allege that the packaging is likely to deceive reasonable consumers. *Bell*, 982 F.3d at 474–75. This standard "requires a probability that a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances, could be misled." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). A statement is deceptive if "it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false." *Id.* "What matters most is how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 476. "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.* at 477.

NTC maintains the labels are truthful because they state that the fruit is "packed in 100% pineapple juice" which accurately conveys that the juice placed into the can was 100% pineapple juice. NTC further contents the labels do not state there are no other ingredients in the products and truthfully list all the ingredients.

This case is factually similar to *Bell* and *Jackson v. Dole Packaged Foods, LLC*, 648 F. Supp. 3d 1039, 1043 (S.D. Ill. 2022). In *Bell*, the plaintiffs alleged they were misled by the products' front labels stating "100% Grated Parmesan Cheese" because the products also contained "between four and nine percent added cellulose powder and potassium sorbate." *Bell*, 982 F.3d at 473. Although the presence of these other ingredients was apparent to any consumer

who took the time to read the ingredient list on the back of the package, the court held that "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id.* at 476. The court noted that many reasonable consumers "do not instinctively parse every front label or read every back label before placing groceries in their carts" and concluded that "a plausible reading [ ] is that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated." *Id.* at 477.

In *Jackson*, the plaintiff alleged she was misled by the products' "100% fruit juice" label because it led customers to believe that the juice in the container was 100% fruit juice and contained no other added ingredients, but the product actually included ascorbic and citric acids. *Jackson*, 648 F. Supp. 3d at 1043. In denying defendant's motion to dismiss plaintiff's IFCP claim, the court noted "[m]uch can be said about whether increasing or changing the concentrations of naturally occurring components of a fruit product renders it something other than 100%, but whether the plaintiff has pleaded her claim sufficiently does not turn on linguistics or theoretical pontifications of the meaning of the phrase used. Rather, what matters here is how consumers behave – how they perceive advertising and how they make decisions." *Id.* at 1047. The court found it could not say as a matter of law that a substantial portion of reasonable consumers were not deceived by the claim made by defendant in its labeling of the product. *Id.*

As was true in *Bell* and *Jackson*, Seper has plausibly alleged that reasonable consumers could be misled by NTC's claim that the products are packed in "100% pineapple juice." She alleges she purchased the products after reviewing the packaging, and seeing "100% pineapple juice", led her to believe the products contained only pineapple in pineapple juice and no additional additives. To survive a motion to dismiss, Seper need only nudge her claims across the line from

conceivable to plausible. She has done so and has sufficiently alleged the products' packaging is misleading.

## Unjust Enrichment

To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (Ill. 1989). NTC argues Seper's unjust enrichment claim fails because it is based on her non-actionable consumer fraud claims. It also argues there can be no unjust enrichment because Seper received what she intended to obtain – canned pineapple in pineapple juice.

As previously discussed, Seper has alleged viable claims under the ICFA. Additionally, it is permissible to pursue alternative theories at the pleading stage. *See* Fed.R.Civ.P. 8(e)(2) (authorizing a party to "set forth two or more statements of a claim or defense alternately or hypothetically" and "to state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."). Accordingly, NTC's motion to dismiss Seper's unjust enrichment claim is denied.

## Breach of Express Warranty

"To state a claim for breach of express warranty [in Illinois], a plaintiff must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Indus. Hard Chrome, Ltd. v. Hetran, Inc.,* 64 F.Supp.2d 741, 747 (N.D. Ill. 1999) (applying Illinois law). Generally, a party must have privity of contract in order to bring a cause of action for breach of express warranty. *Canadian Pac. Ry. Co. v. Williams–Hayward Protective*

*Coatings,* 2005 WL 782698, at *15 (N.D. Ill. 2005) (applying Illinois law). However, an exception applies if a manufacturer "expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs." *In re McDonald's French Fries Litig.,* 503 F.Supp.2d 953, 957 (N.D. Ill. 2007).

Seper alleges NTC made affirmations of fact and the promise to her that the products only contained pineapple in pineapple juice. She further alleges the affirmations of fact and promises became part of the basis of the bargain in which she purchased the products, relied on the affirmations when making her purchasing decisions, and that Seper suffered damages as a result. Based on these allegations, the Complaint sufficiently states a claim for breach of express warranty; the allegations support the exception for express warranties under Illinois law.

## Conclusion

For the foregoing reasons, NTC's Motion to Dismiss is **GRANTED** as to Seper's claims for injunctive relief. The motion is **DENIED** with respect to Plaintiff's claims under the ICFA, for breach of warranty, and for unjust enrichment.

**IT IS SO ORDERED.**

DATED: September 19, 2025

**STACI M. YANDLE**
**United States District Judge**