# EXHIBIT A

[redacted]

3. Describe, in detail, the factual bases for Your representation that the Fruit is "packed in 100% pineapple juice."

**ANSWER:** Defendant remains in the process of identifying information responsive to this Interrogatory and will supplement same upon completion of its inquiry.

**SUPPLEMENTAL ANSWER**: NTC's representation that the Fruit is packed in 100% pineapple juice is based on the fact that it is packed in 100% pineapple juice. The inclusion of citric acid in the Fruit does not change the validity or accuracy of the label, or the statement that the Fruit is packed in 100% pineapple juice.

[redacted]

5. Identify all persons involved in any labeling decision concerning the "packed in 100% pineapple juice" claim and describe their roles.

**ANSWER:** Defendant and MacIsaac & Associates Ltd., Western Canada Office, PO Box 273, Indian Head, Saskatchewan, S0G 2K0.

**SUPPLEMENTAL ANSWER**: Defendant and MacIsaac & Associates Ltd., Western Canada Office, PO Box 273, Indian Head, Saskatchewan, S0G 2K0. There was no specific individual working for Defendant who would be responsible for developing, reviewing, approving, or implementing the label in question. The employees who would have played a role in that process would be Eric DeRose and Christopher DeRose, as well as John MacIssac from MacIsaac & Associates Ltd.

6. Identify any Person from who You purchased, sourced, or acquired any element or substance that was used in forming the ingredients of the Fruit during the Relevant Time Period.

**ANSWER:** Defendant objects to this Interrogatory because it seeks information outside the allegations made in the Complaint and not proportional to the needs of the lawsuit. Specifically, identifying all third parties from whom Defendant purchased, sourced, or acquired any element or substance used in form the ingredients of the Fruit during the Relevant Time Period has no bearing on whether the products Plaintiff alleges she purchased were labeled in a false or misleading manner.

**SUPPLEMENTAL ANSWER**: Defendant identifies the following entities that it purchased the Products from in the relevant time period: Del Monte Kenya, PT Great Giant, Kuiburi, Siam Agro, Takerng, Tipco, Prime, Philpack, S&W Fine Foods, Philippines, and Trofco.

[redacted]

[redacted]

10. Identify the source of the citric acid used in the Fruit during the Relevant Time Period, including:

(a) the name and location of each supplier;

(b) whether the citric acid is purchased as a finished ingredient or produced in-house;

(c) the form in which the citric acid is obtained (e.g., powder, solution); and

(d) whether the citric acid is extracted from pineapples used in the Fruit or obtained from any other source.

**ANSWER:** Defendant objects to this Interrogatory because it seeks information outside the allegations made in the Complaint and not proportional to the needs of the lawsuit. Specifically, identifying the source of the citric acid at issue regarding the Fruit during the Relevant Time Period has no bearing on whether the products Plaintiff alleges she purchased were labeled in a false or misleading manner.

**SUPPLEMENTAL ANSWER**: Defendant is not in possession of information responsive to this Interrogatory as the suppliers of the Product also provided the Citric Acid.

11. Describe all facts and information Defendant relied upon in determining that the inclusion of citric acid in the Fruit is consistent with representing the Fruit as "packed in 100% pineapple juice," including:

(e) whether Defendant contends the citric acid is a component of pineapple juice itself;

(f) whether Defendant contends the citric acid is naturally derived from pineapples used in the Fruit; and

(g) the factual basis for each such contention.

**ANSWER:** Defendant remains in the process of identifying information responsive to this Interrogatory and will supplement same upon completion of its inquiry.

**SUPPLEMENTAL ANSWER**: Defendant determined that the inclusion of citric acid in the Fruit is consistent with representing the Fruit as "packed in 100% pineapple juice because the pineapple Fruit is packed in 100% Pineapple juice. Pineapple juice, as made clear in 21 C.F.R. 146.185(b)(ii) contains 1.35 grams of anhydrous citric acid per 100 ml of juice." Any additional citric acid added to the complete product is clearly indicated in the ingredient declaration on the Information Panel of the Label as required by appliable provisions of the C.F.R. There is no false or misleading claim on the principal display panel because the juice in which the pineapple slices are packed is "100% Pineapple Juice."

[redacted]

[redacted]

16. Describe all testing, validation, or quality control performed to confirm that the packing media qualifies as "packed in 100% pineapple juice" after the addition of citric acid.

**ANSWER:** Defendant objects to this Interrogatory as vague. Specifically, Defendant does not understand what Plaintiff intends to inquire about in stating qualifies as "packed in 100% pineapple juice" after the addition of citric acid. Defendant will supplement its response to this Interrogatory, if and when the question is clarified.

**SUPPLEMENTAL ANSWER:** Defendant is not in possession of information responsive to this Interrogatory as it does not conduct testing. Any testing of the products in question would have been completed by third parties who supplied the products at issue.

**SECOND SUPPLEMENTAL ANSWER**: As stated in its supplemental Answer, Defendant does not conduct testing. With regard to the Fruit, the suppliers of the Fruit provide the specifications and ingredients for the product it is selling to Defendant. That information is used to confirm that the information on the label is accurate. That information is provided to MacIsaac & Associates Ltd. to provide guidance on the information on the applicable label.

17. State whether the formulation and labeling of the Fruit were uniform nationwide during the Relevant Time Period, and if not, identify all variations.

**ANSWER:** Defendant remains in the process of identifying information responsive to this Interrogatory and will supplement same upon completion of its inquiry.

**SUPPLEMENTAL ANSWER**: As stated in its response to Interrogatory 4, the Fruit's labels were changed in approximately December 2023. Other than that change, Defendant is not aware of any material formulation or labeling variations during the relevant time period.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

KATHERINE SEPER, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

NTC MARKETING INC.,

Defendant.

Case No. 3:24-cv-02516-SMY

**DEFENDANT NTC MARKETING INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION**

Defendant NTC Marketing Inc. ("Defendant") serves the following supplemental responses to Plaintiff Katherine Seper ("Plaintiff") First Requests for Production.

**SUPPLEMENTAL RESPONSES**

1. Documents that relate to the use of the phrase "packed in 100% pineapple juice" on the Products' labels or packaging.

**RESPONSE:** Defendant remains in the process of identifying information responsive to this Request and will supplement same upon completion of its inquiry.

2. Documents that discuss, analyze, define, interpret, or explain the meaning of "100% pineapple juice" as used on the Products.

**RESPONSE:** Defendant remains in the process of identifying information responsive to this Request and will supplement same upon completion of its inquiry.

3. Documents that relate to the decision to label the Products as "packed in 100% pineapple juice."

**RESPONSE:** Defendant remains in the process of identifying information responsive to this Request and will supplement same upon completion of its inquiry.

4. Documents that relate to the development, drafting, review, approval, or modification of any Product label or packaging during the Relevant Time Period.

**RESPONSE:** Defendant remains in the process of identifying information responsive to this Request and will supplement same upon completion of its inquiry.

5. Documents that reflect or relate to any changes or modifications to any portion of the Products' labels or packaging during the Relevant Time Period.

**RESPONSE:** Defendant remains in the process of identifying information responsive to this Request and will supplement same upon completion of its inquiry.

6. Documents that discuss whether the "packed in 100% pineapple juice" representation is accurate, truthful, compliant, or misleading.

**RESPONSE:** Defendant remains in the process of identifying information responsive to this Request and will supplement same upon completion of its inquiry.

7. Documents that relate to federal statutes, regulations, rules, guidance documents, or agency interpretations relied upon in labeling or marketing the Products as "packed in 100% pineapple juice."

**RESPONSE:** Defendant remains in the process of identifying information responsive to this Request and will supplement same upon completion of its inquiry.

8. Documents that reflect, evidence, or relate to Defendant's analysis of, reliance upon, or compliance with the FDCA, FDA regulations, the Nutrition Labeling and Education Act, or any other federal law relating to juice labeling, additives, or standards of identity, including Documents prepared by or for Defendant.

**RESPONSE:** Defendant remains in the process of identifying information responsive to this Request and will supplement same upon completion of its inquiry.

9. Documents that support or relate to Defendant's preemption defense.

**RESPONSE:** Defendant remains in the process of identifying information responsive to this Request and will supplement same upon completion of its inquiry.

10. Documents that support or relate to Defendant's safe harbor defense.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

[redacted]

12. Documents that relate to the source, manufacture, procurement, or acquisition of citric acid used in the Products.

**RESPONSE:** Defendant objects to this Request because it seeks information outside the allegations made in the Complaint and not proportional to the needs of the lawsuit. Specifically, Defendant's acquisition of citric acid for the Products has no bearing on whether the products Plaintiff alleges she purchased were labeled in a false or misleading manner.

**SUPPLEMENTAL RESPONSE:** Defendant is not in possession of documents responsive to this Request.

13. Documents that identify each supplier of citric acid used in the Products during the Relevant Time Period.

**RESPONSE:** Defendant objects to this Request because it seeks information outside the allegations made in the Complaint and not proportional to the needs of the lawsuit. Specifically, Defendant's acquisition of citric acid for the Products has no bearing on whether the products Plaintiff alleges she purchased were labeled in a false or misleading manner.

**SUPPLEMENTAL RESPONSE:** Defendant has identified the suppliers of the Products during the Relevant Time Period in its responses to Plaintiff's Interrogatories. Defendant will produce responsive documents, if any, by June 16, 2026, as agreed upon between the parties during the June 2, 2026, meet and confer conference.

14. Documents that describe the form in which citric acid is obtained and used in the Products, and also how much citric acid is used in the Products, on a per unit or other basis.

**RESPONSE:** Defendant objects to this Request because it seeks information outside the allegations made in the Complaint and not proportional to the needs of the lawsuit. Specifically, Defendant's acquisition of citric acid for the Products has no bearing on whether the products Plaintiff alleges she purchased were labeled in a false or misleading manner.

**SUPPLEMENTAL RESPONSE**: Defendant will produce responsive documents, if any, by June 16, 2026, as agreed upon between the parties during the June 2, 2026, meet and confer conference.

[redacted]

16. Documents that discuss the function or purpose of citric acid in the Products, including its effect on flavor, pH, shelf life, or microbial growth.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

17. Documents that discuss whether citric acid constitutes an additive, ingredient, preservative, or processing aid in the Products.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

18. Documents that discuss whether the inclusion of citric acid is consistent with representing the Products as "packed in 100% pineapple juice."

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

19. Documents that relate to the formulation of the packing media used in the Products.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

20. Documents that describe the composition of the packing media, including juice, water, juice concentrate, and additives.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

21. Documents that discuss whether the packing media qualifies as "100% pineapple juice" after the addition of citric acid.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

28. Documents that constitute or reflect Price Premium Data relating to the Products during the Relevant Time Period.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

29. Documents that relate to pricing strategy for the Products during the Relevant Time Period.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

[redacted]

31. Documents sufficient to show revenue generated from sales of the Products in Illinois during the Relevant Time Period.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

32. Documents sufficient to show revenue generated from sales of the Products in the United States during the Relevant Time Period.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

33. Documents sufficient to show units sold of the Products in Illinois during the Relevant Time Period.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

34. Documents sufficient to show units sold of the Products in the United States during the Relevant Time Period.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

35. Documents that identify supply chain participants involved in the manufacture or distribution of the Products.

**RESPONSE:** Defendant objects to this Request because it seeks information outside the allegations made in the Complaint and not proportional to the needs of the lawsuit. Specifically, Defendant's supply chain participants involved in the manufacturing or distribution of the Products has no bearing on whether the products Plaintiff alleges she purchased were labeled in a false or misleading manner.

**SUPPLEMENTAL RESPONSE**: Defendant will produce responsive documents, if any, by June 16, 2026, as agreed upon between the parties during the June 2, 2026, meet and confer conference.

[redacted]

[redacted]

37. Documents that support Defendant's contention that consumers knew or should have known the Products contained citric acid.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

38. Documents that support Defendant's contention that Plaintiff or Consumers suffered no injury, loss, or damages.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

39. Documents that support Defendant's contention that its conduct was not misleading.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

[redacted]

[redacted]

41. Documents that reflect Defendant's corporate structure, including parent companies, subsidiaries, officers, directors, and key Employees.

**RESPONSE:** Defendant objects to this Request because it seeks information outside the allegations made in the Complaint and not proportional to the needs of the lawsuit. Specifically, Defendant's corporate structure has no bearing on whether the products Plaintiff alleges she purchased were labeled in a false or misleading manner.

[redacted]

43. Documents relied upon, reviewed, or consulted in answering Plaintiff's Interrogatories.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

44. Documents, other than privileged attorney-client communications or attorney work product, that discuss, analyze, evaluate, or respond to the allegations concerning the Products or the labeling claim "packed in 100% pineapple juice," including internal factual investigations, business analyses, consumer complaint reviews, or risk assessments, during the Relevant Time Period.

**RESPONSE:** Defendant remains in the process of identifying documents responsive to this Request and will supplement same upon completion of its inquiry.

[redacted]

*Attorneys for Defendant*

By: /s/ MATTHEW J. BELL
Matthew J. Bell, Mo. Bar No. 67241
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
mbell@mgl.law
P: (314) 669-5490
F: (888) 632-6937

**CERTIFICATE OF SERVICE**

I certify that, on June 9, 2026, a true and correct copy of the foregoing was served on the attorneys of record for Plaintiff Katherine Seper, via email, as follows:

Matthew H. Armstrong (Email: matt@mattarmstronglaw.com)
Stuart L. Cochran (Email: scochran@condontobin.com)
David C. Nelson (Email: dnelson@nelsonlawpc.com)
Robert L. King (Email: king@kinglaw.com)

By: /s/ MATTHEW J. BELL